IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DEON MONROE,

      Petitioner,

  v.                                  CASE NO. 2:05-cv-857
                                        JUDGE FROST

ROB JEFFRIES, Warden,            MAGISTRATE JUDGE ABEL

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Magistrate Judge on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties.

This case involves petitioner's February 5, 2003, guilty plea in the Logan County Court of Common Pleas on trafficking in drugs.  On April 9, 2003, the Judge sentenced Monroe to five years incarceration.  He did not file a timely appeal.  Approximately one year later, on February 3, 2004, he filed a motion for delayed appeal; however, the state appellate court denied it as untimely.

On August 1, 2005, petitioner executed the instant habeas corpus petition.  Monroe asserts that he was denied his right to appeal because he was not advised that he had the right to appeal his guilty plea.  He also asserts that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004). Respondent contends that this action is barred as untimely under 28 U.S.C. §2244(d).  Alternatively, respondent argues that petitioner's claims are without merit or procedurally defaulted.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner be appointed counsel and that an evidentiary hearing be held to further develop the record as to whether trial counsel advised

Monroe of his right to appeal his guilty plea, when he became aware of that right, and whether he was diligent in discovering that he had the right to appeal.

## I. PROCEDURAL HISTORY

Petitioner was indicted by the Logan County grand jury on trafficking in drugs, in violation of O.R.C. §2925.03(A)(1). Exhibit A to Return of Writ. While represented by counsel, petitioner pleaded guilty. On April 9, 2003, he was sentenced to five years. Exhibit B to Return of Writ. Petitioner never filed a timely appeal; however, on February 3, 2004, he filed a *pro se* motion for delayed appeal. Exhibit C to Return of Writ. On March 22, 2004, the appellate court denied his motion for delayed appeal. Exhibit D to Return of Writ. Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court; however, on August 4, 2004, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Exhibits E and G to Return of Writ.

On August 8, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.[1] He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. The court of appeals erred in denying the appellant's constitutional right to appeal when the court denied the motion for leave to appeal pursuant to App.R. 5(A), where appellant satisfied the criteria for establishing sufficient reasons for his failure to timely file a notice of appeal, and where the appellant showed by affidavit that he had not been advised by the trial court or counsel of the necessity of filing a notice of appeal within 30 days after judgment of conviction was imposed.
>
> 2. When the trial court's record does not indicate that the trial court

---

[1] Petitioner initially filed his petition in the Northern District of Ohio. On September 15, 2005, the case was transferred to this Court.

advised the defendant at the time of sentencing that by entering a plea of guilty that the defendant was waiving his right to an appeal; a negotiated plea of guilty does not take away a defendant's constitutional right to an appeal.

3. The court of appeals erred in denying the appellant's pro se motion for leave to appeal where the appellant demonstrated that immediately following the judgment of conviction that he was not represented by counsel, and being an indigent person, he was not advised of his right to the appointment of counsel on appeal, nor that counsel could be appointed at State expense, in violation of his 5th, 6th, and 14th Amendment rights.

4. The judgment entry of sentencing, dated April 9, 2003, states that "Defendant was afforded all rights pursuant to Criminal Rule 32." The judgment entry mis-speaks, where the appellate court failed to examine the trial transcripts of the plea and sentencing hearing. The court would have discovered that nowhere in the record did the trial judge, state prosecutor, or defense counsel advise the defendant-appellant of his constitutional right to appeal.

5. The trial court erred and violated appellant's rights under the 5th, 6th, and 14th Amendments to the U.S. Constitution by making findings of fact by a preponderance of the evidence that were not charged in the indictment, admitted by the appellant, or found by a jury to justify imposing a longer than minimum prison term.

It is the position of the respondent that this action must be dismissed as untimely. Alternatively, respondent contends that claim five is procedurally defaulted, and that the remainder of petitioner's claims are without merit.

## II. STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. §2244(d) provides:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the

3

latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Here, petitioner's conviction became final on May 9, 2003, when the time period expired to file a timely appeal to the state appellate court. *Searcy v. Carter*, 246 F.3d 515, 518-19 (6th Cir. 2001); *Marcum v. Lazaroff*, 301 F.3d 480, 481 (6th Cir. 2002); Ohio App.R. 4(A). The statute of limitations ran for a period of 269 days, until February 3, 2004, when petitioner filed a motion for delayed appeal pursuant to Ohio Appellate Rule 5(A) in the state appellate court. The statute of limitations then was tolled from February 3, 2004, until November 1, 2004 (August 4, 2004, plus ninety days), when the time period expired to file a petition for a *writ of certiorari* from the Ohio Supreme Court's August 4, 2004, dismissal of his appeal. *See Allen v. Yukins*, 366 F.3d 396, 400 (6th Cir. 2004). The statute of limitations then began to run again and expired 46 days later, on December 16, 2004. Petitioner executed his habeas corpus petition almost eight months later, on

4

August 1, 2005.  Thus, this action is untimely, unless one of the provisions of 2244(d)(1)(B), (C), or (D), or equitable tolling of the statute of limitations is appropriate.

Petitioner asserts that equitable tolling of the statute of limitations is appropriate.  Petitioner asserts that this case is analogous to the scenario in *Waldron v. Jackson*, 348 F.Supp.2d 877 (N.D. Ohio 2004), which tolled the running of the statute of limitations under 28 U.S.C. §2244(d)(1)(B), because the petitioner was denied the effective assistance of counsel when his attorney failed to carry out the petitioner's request that he file an appeal.  The District Court reasoned:

> Section 2244(d)(1)(B) provides that the statute of limitations does not begin to run until at least:

> the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action.

> ***

> [I]t is evident that Mr. Waldron's appellate counsel was constitutionally ineffective because his counsel failed to perfect a timely appeal in direct contravention of Mr. Waldron's wishes. *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (explaining that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"); *White v. Schotten*, 201 F.3d 743, 752 (6th Cir.2000) (concluding that an attorney's failure to abide by "established time deadlines in handling a client's appeal is conduct falling below the minimal standards of competency that federal case law has imposed upon counsel to satisfy constitutional safeguards"); *Ludwig v. U.S.*, 162 F.3d 456, 459 (6th Cir.1998) (holding that "the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment").

The evidence in this case demonstrates that Mr. Waldron's appellate counsel was aware of Mr. Waldron's desire to file an appeal, a fact not disputed by the respondent. Mr. Waldron first stated his desire to appeal at the time of sentencing, and the trial court specially appointed appellate counsel to represent Mr. Waldron on his direct appeal. (Tr. at 708). Though Mr. Waldron never directly spoke with Mr. Ingalls prior to the expiration of his deadline to appeal, Mr. Ingalls' filing of a notice of appeal four days late demonstrates that he understood Mr. Waldron's desire to appeal was unequivocal. (Waldron Aff. at ¶ 5). However, even if Mr. Waldron's desire to appeal was somehow unclear, his counsel would nonetheless have been constitutionally ineffective for failing to consult with Mr. Waldron about an appeal because, as Mr. Waldron's appointed appellate counsel, he had reason to think that Mr. Waldron was interested in appealing. *See Roe*, 528 U.S. at 480, 120 S.Ct. 1029.

Likewise... this ineffective assistance of counsel is imputed to the state, *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) and constitutes an impediment to filing an application created by the state, *Winkfield v. Bagley*, 66 Fed.Appx. 578, 582 (6th Cir. May 28, 2003). The remaining question therefore is whether the state action, Mr. Ingalls' ineffective assistance, actually prevented Mr. Waldron from filing a timely habeas petition. According to the Sixth Circuit's unreported decision in *Winkfield*, Section 2244(d)(1)(B) requires a "causal relationship between the unconstitutional state action and being prevented from filing the petition." *Id.* at 583.... Mr. Waldron explains the causal relationship as follows: 1) his counsel was ineffective by failing to file a timely notice of appeal; 2) his Rule 5(a) delayed appeal was only necessary because of his appellate counsel's ineffective assistance; 3) he could not have brought this habeas action until the claim contained in the petition had first been presented to and exhausted in state court, including the filing of a delayed appeal. (Docket # 22, at 10). Each of these three assertions are unassailable as Mr. Ingalls' ineffectiveness was already demonstrated above, as his counsel's ineffectiveness clearly created the need to file a delayed appeal, and as the filing of a delayed appeal is a necessary step in exhausting Mr. Waldron's state remedies and "is a condition to seeking habeas corpus relief in the federal courts," *Dombkowski v. Johnson,* 488 F.2d 68, 70 (6th Cir.1973); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994); *see Hargrove v. Brigano*, 300 F.3d 717, 720 (6th Cir.2002) (recognizing that the filing a delayed appeal in the Ohio Supreme Court was necessary to exhaust a claim).

\*\*\*

... Abruptly left without the assistance of counsel, Mr. Waldron may not have been ultimately prevented from filing a habeas petition but he was prevented from filing a timely habeas petition. To find no causal relationship between the ineffective assistance of counsel, the resulting delay associated with his Rule 5(A) motion, and the untimely habeas petition ignores reality and fails to fully incorporate the purpose behind a defendant's constitutional right to effective assistance of counsel on their initial appeal. As explained by the United States Supreme Court:

In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that-like a trial-is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented appellant-like an unrepresented defendant at trial-is unable to protect the vital interests at stake.

*Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Accordingly, the state-created impediment does not simply evaporate once Mr. Waldron's counsel failed to file a timely appeal; rather, its effects reverberate over time, forcing the filing of a delayed appeal and necessarily delaying the filing of his habeas petition. To find Mr. Waldron's petition untimely because he did not more quickly overcome the state-created impediment would necessarily punish him for a constitutional violation by the State. Such a result is precisely what Section 2244(d)(1)(B) is designed to avoid by ensuring that a state-created impediment does not prevent the timely filing of a habeas petition.

\*\*\*

Given that the State created the constitutional impediment to the perfection of Mr. Waldron's appeal, it should not benefit from the subsequent delay created by that violation. Because the petitioner's state claims remain unexhausted until he or she files a motion for a delayed appeal, his ineffective assistance of counsel in filing a timely

> appeal continues to prevent his filing of a federal habeas petition until
> the resolution of his delayed appeal. Once the petitioner's delayed
> appeal has been finally ruled on by the state courts and the ninety day
> period for filing *certiorari* with the United States Supreme Court has
> expired, his or her habeas limitations' period begins to run.

*Id.*, at 883-885 (footnote omitted).  The District Court further noted that under 28 U.S.C.
§2244(d)(1)(D), depending on the date that Waldron could have discovered with due diligence the
factual predicate for his claims of denial of his right to appeal and ineffective assistance of counsel
due to his attorney's failure to file the appeal, the action may also have been timely.  *Id.*, at 886.

The United States District Court for the Southern District of Ohio, Western Division,
similarly concluded that a habeas corpus petition was timely in *Woods. v. Jackson*, 2006 WL 746293
(S.D. Ohio March 22, 2006).  In *Woods*,

> [p]etitioner, who on July 14, 1996 was sentenced for three counts of
> aggravated burglary with firearm specifications, two counts of
> robbery, and two counts of kidnapping with firearm specifications,
> informed his counsel that he wished to pursue an appeal (*Id.*). In 1998
> Petitioner discovered that his counsel had not filed an appeal in his
> case (*Id.*). He contacted the Public Defender's Office on February 6,
> 1998, to ask for assistance with his appeal (*Id.*). By May 26, 1998,
> the Public Defender's Office informed Petitioner it would file a
> motion for a delayed appeal on his behalf, which it subsequently filed
> on August 28, 1998 (*Id.*). In such motion, Petitioner indicated that
> after his sentencing, his trial counsel refused his phone calls, and
> those made on his behalf, and did not correspond with him (*Id.*).
> Petitioner understood from his fellow inmates that an appeal could
> take years (*Id.*).
>
> On October 10, 1998, the Court of Appeals overruled Petitioner's
> motion for leave to file a delayed appeal on the ground that Petitioner
> had failed to provide "sufficient reasons for his failure to perfect an
> appeal as of right" (*Id.*). Petitioner appealed to the Supreme Court of
> Ohio, which denied review on February 3, 1999 (*Id.*). Petitioner then
> filed a petition for a *writ of certiorari,* which the United States
> Supreme Court denied on October 4, 1999 (*Id.*). On September 21,

8

2000, Petitioner filed the instant petition for a writ of habeas (*Id*.)

\* \* \*

Of critical importance in this case is the necessity, in the Court's view, to distinguish the settled jurisprudence that a Petitioner is not entitled to effective assistance of counsel in filing a habeas petition from the equally settled principle that every defendant has the right to effective assistance in initially appealing his underlying criminal conviction. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus we have rejected suggestions that we establish a right to counsel on discretionary appeals"). This case does not present a situation where counsel failed to effectively file a timely habeas corpus petition subsequent to an exhausted appeal. On the contrary, this case presents the situation where Petitioner's counsel never properly filed or exhausted the appeal in the first place.

The Court does not find it correct to retreat from its prior conclusion that the clock of the statute of limitations stopped running from the time a notice of appeal should have been filed, to the date on which through new counsel Petitioner filed his motion for a delayed appeal, August 28, 1998 (doc. 17). The Court finds well-taken Petitioner's argument that starting from the filing of the delayed appeal, all other periods of time were tolled until the United States Supreme Court denied *certiorai. Abela*, 348 F.3d 164.

The Court is satisfied that *Waldron v. Jackson*, 348 F.Supp.2d 877, 883 (N.D.Ohio 2004), provides the appropriate framework within which to view this case. The Court disagrees with the Magistrate Judge's conclusion that *Winkfield*, 66 Fed. Appx. 578 (6th Cir.2003), should lead to a different conclusion, as the facts in *Winkfield* clearly show the petitioner in that case waited nearly ten years before realizing his appeal may not have been properly filed. 66 Fed. Appx. 580. Here, the Petitioner discovered the problem and sought help with his appeal within about a year and a half of his conviction. The facts of this case do not show a lack of diligence on Petitioner's part in any way comparable to that of the petitioner in *Winkfield*. Petitioner here acted reasonably and diligently.

9

> The Court finds well-taken Petitioner's argument that inmates should not be required to file habeas petitions when they have not yet exhausted their state court remedies. Such a requirement, endorsed by the Magistrate Judge's *Report and Recommendation,* does not comport with long-established habeas jurisprudence requiring the exhaustion of state remedies as a prerequisite to the application for a writ of habeas corpus. *Dombowski v. Johnson*, 488 F.2d 68, 70 (6th Cir.1973).
>
> ***
>
> ... Here, Petitioner had the right to effective assistance to file an appeal, was denied such right, and the impediment was not removed until the ultimate exhaustion of his motion for a delayed appeal.
>
> Moreover, here, Petitioner's new counsel took about three months after agreeing to represent Petitioner to prepare Petitioner's motion for a delayed appeal. This is not an unreasonable amount of time....
>
> ..... The Court concludes that Petitioner was entitled to statutory tolling of the statute of limitations, which commenced upon the removal of the impediment to his filing for an application, the date the Supreme Court declined to review his motion for a delayed appeal, October 5, 1999. *Waldron v. Jackson*, 348 F.Supp.2d 877, 883 (N.D.Ohio 2004). The Court further finds that under the facts of this case Petitioner should further be entitled to equitable tolling under the factors articulated in *Dunlap*. 250 F.3d 1001, 1008 (6th Cir.2001).

*Id.*

The facts in this case differ significantly from those in *Waldron* and *Woods*, in that petitioner makes no allegation here that he directed his attorney to file an appeal, which, if proved, would establish that he was denied the ineffective assistance of counsel. *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)(failure of an attorney "to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment.")  Instead, petitioner

10

alleges that he did not know about and was not advised of his appellate rights by either the trial court or appellate counsel, and was thus denied his right to appeal.

Respondent argues that petitioner's allegation that he was denied his right to appeal is, in any event, without merit in view of petitioner's guilty plea. *Return of Writ*, at 13-16. Respondent's argument is foreclosed by *Wolfe v. Randle,* 267 F.Supp.2d 743, 746-48 (S.D. Ohio 2003), wherein the United States District Court for the Southern District of Ohio, Western Division, granted a petition for a writ of habeas corpus on similar grounds, concluding that "due process is offended when a defendant who pled guilty is kept completely ignorant of his appellate rights." *Id.*, at 746.

> [O]nce the state grants the right to appeal it must follow procedures comporting with the Fourteenth Amendment. *Evitts v. Lucey*, 469 U.S. 387, 403, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). After deciding that a right to appeal is essential, the state cannot then deny defendant due process. Due Process claims are implicated when a defendant is denied an adequate opportunity to present his claim and receive an adjudication on the merits, or when defendants are treated differently in such a way that affects their ability to pursue a meaningful appeal. *Id*. at 402, 405, 105 S.Ct. 830. Ohio has granted all defendants the right to appeal following a criminal conviction, and as a result must conform its procedures to the standards of due process. Ohio R.Crim.P 32.
>
> ... [D]ue process is offended when a defendant who pled guilty is kept completely ignorant of his appellate rights. *Cf. Peguero v. U.S.*, 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18; *White v. Johnson*, 180 F.3d 648, 652 (5th Cir.1999). The Supreme Court has addressed the procedural requirements for indigent defendants in the appellate process on several occasions. In *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Court held that an indigent defendant is entitled to a transcript in order to pursue an appeal. The Court later held that indigent defendants had a right to counsel on their first appeal, *Douglas v. California*, 372 U.S. 353, 365-57, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and that all defendants have the right to effective assistance of appellate counsel, *Evitts v. Lucey*, 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). The right of notice is more fundamental than the rights previously guaranteed by

11

the Supreme Court. Precedent therefore dictates that failure to inform an indigent defendant of their appellate rights violates due process.... [A] defendant is not necessarily denied a constitutional right when a state court denies a request for a delayed appeal. However, due process rights are implicated when a delayed appeal is the result of a lower court's failure to ensure that an indigent defendant's appellate rights are protected.

\*\*\*

.... The Constitution is violated if a convicted defendant is not given the right to appeal "by reason of his lack of knowledge of his right and the failure of his counsel or the court to advise him of his right to appeal with the aid of counsel." *Jacobs v. Mohr*, 265 F.3d 407, 419 (6th Cir.2001) (citing *Goodwin v. Cardwell*, 432 F.2d 521, 522-23 (6th Cir.1970)). The defendant has ultimate authority in making certain fundamental determinations pertaining to his case, including the right to appeal. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The authority to pursue an appeal, even one following a guilty plea, is the defendant's alone. *Marrow v. United States,* 772 F.2d 525, 530 (9th Cir.1985). The decision to appeal is not the determination of defendant's lawyer. *Id.* In order to make such a decision, the defendant must have knowledge about the appeals options available to him. *United States ex rel. Smith v. McMann*, 417 F.2d 648, 654 (2d Cir.1969), *cert. denied*, 397 U.S. 925, 90 S.Ct. 929, 25 L.Ed.2d 105 (1970) (construing *Douglas v. California* as imposing on a state "a duty to warn every person convicted of a crime of his right to appeal...the right to appeal at the expense of the state is a mere illusion if the convicted indigent defendant does not know such a right exists."); *State v. Sims*, 27 Ohio St.2d 79, 272 N.E.2d 87, 91 (1971) (finding that "in the absence of evidence in the record upon which it could be determined that an indigent convicted defendant knowingly and intelligently waived his right of direct appeal...it was error for the Court of Appeals to dismiss the motion for leave to appeal without making such a factual determination.")

In order to be properly informed, a defendant must be told of his right to appeal, the procedures and time limits involved in proceeding with that appeal, and the right to have the assistance of appointed counsel for that appeal. *White*, 180 F.3d at 652 (5th Cir.1999), *Norris v. Wainwright,* 588 F.2d 130, 135 (5th Cir.), *cert. denied*, 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979) The petitioner bears the burden

of showing by a preponderance of the evidence that he was not advised of his rights. *Faught v. Cowan*, 507 F.2d 273, 275 (6th Cir.1974), *cert. denied*, 421 U.S. 919, 95 S.Ct. 1583, 43 L.Ed.2d 786 (1975). Further, a defendant cannot base a claim on the court's failure to inform him of his appellate rights if he has personal knowledge of these rights. *Peguero,* 526 U.S. at 29-30, 119 S.Ct. 961(citing *Soto v. U.S.*, 185 F.3d 48, 54 (2d Cir.1999)).

\*\*\*

... Petitioner offers ample evidence supporting his claim. Namely, Petitioner offers (1) his sworn declaration that neither his counsel or the trial court advised him of his appellate right and he did not learn that he could file a delayed appeal until informed by inmate clerks in 1999 (doc. 1); (2) Respondent's statements that Petitioner's defense counsel could not remember if he had advised Petitioner of his right to appeal (doc. 17); and (3) the transcript of the plea and sentencing which are devoid of notice of appeal (*Id.*). Respondent has been unable to offer any evidence showing that Petitioner knew of his appellate rights or was informed about them by either his counsel or the trial judge. Petitioner has successfully shown by a preponderance of the evidence that the trial court judge and his own counsel failed to advise him of his right to appeal, and he was not otherwise aware of this right.

When evaluating a claim for habeas corpus relief, only holdings of the United States Supreme Court may be relied on with authority. *Harris,* 212 F.3d at 944-945. As discussed previously, the Supreme Court has specifically put in place procedural protections to protect indigent defendants, including the right to a transcript, *Griffin*, 351 U.S. 12, 76 S.Ct. 585; the right to appellate counsel, *Douglas*, 372 U.S. 353, 83 S.Ct. 814; and the right to have that counsel provide effective assistance with their appeal, *Evitts*, 469 U.S. 387, 105 S.Ct. 830. The protections set forth by the Supreme Court all assume that the defendant knows of his right to appeal. Because notice is more basic than the rights granted in Supreme Court precedent and is a foundation of Supreme Court case law, precedent mandates that due process is violated when a defendant is not informed of his right to appeal by the trial court or by his counsel. The Ohio Court of Appeals decision denying Petitioner's claim was therefore an unreasonable application of clearly established Supreme Court precedent.

***

> When a defendant pleads guilty he limits his options to appeal, but certain appellate avenues remain open. The Supreme Court has previously stressed that an indigent defendant must be afforded certain procedural protections so that they may properly pursue their appellate rights. *See Griffin*, 351 U.S. 12, 76 S.Ct. 585, right for an indigent defendant a transcript for pursuing their appeal; *Douglas,* 372 U.S. 353, 83 S.Ct. 814, indigent defendants have a right to counsel for their first appeal; *Evitts*, 469 U.S. 387, 105 S.Ct. 830, all defendants have the right to effective assistance of appellate counsel. These rights all presuppose that the defendant is informed of the appellate rights. Due process is offended if a defendant who pleads guilty is not made aware of his right to appeal. This proposition is unaffected by the lack of an explicit constitutional requirement.

*Id.*, at 746-48.  The transcripts of petitioner's guilty plea and sentencing fail to reflect that petitioner was advised of his right to appeal.  *See* Exhibits H and I to Return of Writ.

Respondent similarly contends that claim five, in which petitioner asserts that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004), in any event, is procedurally defaulted due to petitioner's failure to raise such claim in a timely appeal.  Again, respondent's argument is not well taken.  In *Deitz v. Money*, 391 F.3d 804, 810-11 (6th Cir. 2004), the United States Court of Appeals for the Sixth Circuit held that Ohio's Appellate Rule 5(A), the provision which governs the filing of delayed appeals in the Ohio appellate courts, does not constitute an adequate and independent state ground to preclude federal habeas corpus review:

> [W]e conclude that the state court's refusal to allow [petitioner] to file a delayed appeal under Rule 5(A) does *not* constitute an "adequate" ground to bar habeas review. *See Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986) (holding that a procedural forfeiture must be based on an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim). The district court denied Deitz's motion because he "failed to set forth sufficient reasons for having failed to perfect a timely appeal." But Rule 5(A)

14

does not specify the criteria the courts should use in determining whether to grant a delayed appeal. Instead, it simply requires that the defendant set forth the reasons for the failure to perfect an appeal of right.

The decision to grant or deny a motion for leave to appeal pursuant to rule 5(A) is therefore solely within the discretion of the appellate court. *State v. Fisher,* 35 Ohio St.3d 22, 517 N.E.2d 911, 914 (1988). A rule that grants such discretion to the courts is not "firmly established and regularly followed" so as to be adequate within the meaning of *Maupin. See Hutchison v. Bell,* 303 F.3d 720, 738 (6th Cir.2002) (ruling that a Tennessee procedure was adequate for purposes of enforcing a procedural bar because "Tennessee's due process exception does not grant unfettered discretion to state courts in applying procedural default rules.").

The Magistrate's Report and Recommendation makes much of the fact that Deitz waited four years before raising the issue of ineffective assistance of counsel in his motion to file a delayed appeal. But Rule 5(A) does not set a time limit for the filing of a delayed appeal. Although some Ohio courts have refused to grant motions for leave to file a delayed appeal because of the undue lapse of time, others have allowed appeals long after the time for filing a direct appeal has expired. *Compare State v. Robinson,* No. 04AP-713, 2004 WL 1945687 (Ohio Ct.App. Sept. 2, 2004) (unpublished) (holding that a three-and-a-half-year delay in filing a motion was unreasonable), *with State v. Simmons,* No. 69238, 1997 WL 83124 (Ohio Ct.App. Feb. 27, 1997) (unpublished) (noting that a motion to file a delayed appeal had been granted in the case more than five years after the defendant pled guilty).

*Id.*

In view of *Waldron* and *Woods, supra*, if petitioner establishes that he was denied the effective assistance of counsel due to his attorney's failure to advise him of his right to file an appeal, this action may be timely under 28 U.S.C. §2244(d)(1)(B). The United States Supreme Court held in *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000):

In those cases where the defendant neither instructs counsel to file an

appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning--advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.... If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance....

\*\*\*

We... hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. *See id.*, at 690, 104 S.Ct. 2052 (focusing on the totality of the circumstances). Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

\*\*\*

16

The second part of the *Strickland* test requires the defendant to show prejudice from counsel's deficient performance.

\*\*\*

... [W]e hold that, to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.

*Id*., at 478-484.

Additionally, if petitioner acted with due diligence, his habeas corpus petition may be timely under 28 U.S.C. §2244(d)(1)(D), which provides that the statute of limitations does not begin to run until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See DiCenzi v. Rose*, 419 F.3d 493, 500 (6th Cir. 2005)(remanding the case to the District Court for a determination of whether petitioner exercised due diligence in learning about his right to appeal his guilty plea where petitioner alleges that neither the trial court nor his attorney advised him of his right to appeal); *see also Granger v. Hurt*, 90 Fed.Appx. 97 (6th Cir. January 23, 2004)(petitioner not unreasonable in waiting two months to learn that his attorney had failed to file an appeal), citing *Wims v. United States,* 225 F.3d 186, 190 n. 4 (2d Cir.2000).

Because Monroe alleges that his attorney did not advise him of his right to appeal his guilty plea and the record is not fully developed regarding when he became aware of that right, the Magistrate Judge RECOMMENDS that petitioner be appointed counsel and that an evidentiary hearing be held to further develop the record as to whether trial counsel advised Monroe of his right to appeal his guilty plea, when he became aware of that right, and whether he was diligent in discov-

ering that he had the right to appeal.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


s/Mark R. Abel
United States Magistrate Judge