IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEON MONROE,**  CASE NO. 2:05-cv-857
  JUDGE FROST
 Petitioner,  MAGISTRATE JUDGE ABEL

**ROB JEFFRIES, Warden,**

 Respondent.

**ORDER and
REPORT AND RECOMMENDATION**

Petitioner asserts in this habeas corpus petition that he was denied his right to appeal; that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004); and that the state appellate court improperly denied his motion for delayed appeal. Respondent requests dismissal of this action as untimely under 28 U.S.C. §2244(d). In order to determine whether the instant habeas corpus petition may be timely, petitioner was appointed counsel for an evidentiary hearing on the issue of whether trial counsel advised Monroe of his right to appeal his guilty plea, when Monroe became aware of that right, and whether Monroe was diligent in discovering that he had the right to appeal. *See* Doc. No. 30. The parties, however, have agreed that no evidentiary hearing is necessary. This matter is now before the Court on the instant petition, respondent's return of writ, respondent's supplemental brief, petitioner's motion for summary judgment, respondent's response, the record as expanded, and the exhibits of the parties.

For the reasons that follow, Magistrate Judge **RECOMMENDS** that petitioner's motion for summary judgment, Doc. No. 38, be **GRANTED,** in part and **DENIED**, in part, and that the petition for a writ of habeas corpus be conditionally **GRANTED** on petitioner's claim that he was denied the right to appeal and that the State of Ohio reinstate petitioner's appeal within sixty (60) days or release

petitioner. The Magistrate Judge further **RECOMMENDS** that the remainder of petitioner's claims be **DISMISSED** as moot.

## I. PROCEDURAL HISTORY

As discussed in the *Report and Recommendation*, April 28, 2006, Doc. No. 22, while represented by counsel, petitioner pleaded guilty in the Logan County Court of Common Pleas to trafficking in drugs, in violation of O.R.C. §2925.03(A)(1). On April 9, 2003, he was sentenced to five years incarceration. Petitioner never filed a timely appeal. On February 3, 2004, he filed a motion for delayed appeal, which motion was denied by the state appellate court on March 22, 2004. Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court; however, on August 4, 2004, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On August 8, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. The court of appeals erred in denying the appellant's constitutional right to appeal when the court denied the motion for leave to appeal pursuant to App.R. 5(A), where appellant satisfied the criteria for establishing sufficient reasons for his failure to timely file a notice of appeal, and where the appellant showed by affidavit that he had not been advised by the trial court or counsel of the necessity of filing a notice of appeal within 30 days after judgment of conviction was imposed.
>
> 2. When the trial court's record does not indicate that the trial court advised the defendant at the time of sentencing that by entering a plea of guilty that the defendant was waiving his right to an appeal; a negotiated plea of guilty does not take away a defendant's constitutional right to an appeal.

>   3. The court of appeals erred in denying the appellant's *pro se* motion for leave to appeal where the appellant demonstrated that immediately following the judgment of conviction that he was not represented by counsel, and being an indigent person, he was not advised of his right to the appointment of counsel on appeal, nor that counsel could be appointed at State expense, in violation of his 5th, 6th, and 14th Amendment rights.
>
>   4. The judgment entry of sentencing, dated April 9, 2003, states that "Defendant was afforded all rights pursuant to Criminal Rule 32." The judgment entry mis-speaks, where the appellate court failed to examine the trial transcripts of the plea and sentencing hearing. The court would have discovered that nowhere in the record did the trial judge, state prosecutor, or defense counsel advise the defendant-appellant of his constitutional right to appeal.
>
>   5. The trial court erred and violated appellant's rights under the 5th, 6th, and 14th Amendments to the U.S. Constitution by making findings of fact by a preponderance of the evidence that were not charged in the indictment, admitted by the appellant, or found by a jury to justify imposing a longer than minimum prison term.

It is the position of the respondent that this action is untimely.

## II. STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. §2244(d) provides:

> .   (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>   (C) the date on which the constitutional right asserted was initially

recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006), the United States Court of Appeals for the Sixth Circuit recently addressed whether an otherwise untimely federal habeas corpus petition may be timely where a defendant is not advised of his right to appeal. The United States Court of Appeals for the Sixth Circuit held that in such a scenario, under 28 U.S.C. §2244(d)(1)(D), the statute of limitations does not begin to run on a claim that the state appellate court improperly denied a motion for delayed appeal until the date on which the state appellate court denied the motion for delayed appeal. *Id*., at 469. Here, that date is March 22, 2004. Exhibit D to Return of Writ. Further, petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court, which appeal was dismissed on August 4, 2004. Exhibit E and G to Return of Writ. Petitioner filed the instant habeas corpus petition within one year of the Ohio Supreme Court's decision, on August 8, 2005. Therefore, in view of *DiCenzi v. Rose, supra*, the Magistrate Judge concludes that claims one and three, wherein petitioner asserts that the state appellate court improperly denied his motion for delayed appeal, are timely.

The remainder of petitioner's claims raise issues that relate to events that took place at the time of petitioner's guilty plea and sentencing. Therefore, as previously discussed, *see Report and*

*Recommendation*, Doc. No. 22, the statute of limitations on these claims began to run on the date that petitioner's conviction became final, May 9, 2003, when the time period expired to file a timely appeal to the state appellate court. *See DiCenzi v. Rose, supra,* 452 F.3d at 469*; Searcy v. Carter*, 246 F.3d 515, 518-19 (6th Cir. 2001); *Marcum v. Lazaroff*, 301 F.3d 480, 481 (6th Cir. 2002); Ohio App.R. 4(A). The statute of limitations ran for 269 days, until February 3, 2004, when petitioner filed a motion for delayed appeal pursuant to Ohio Appellate Rule 5(A) in the state appellate court. The statute of limitations then was tolled from February 3, 2004, until November 1, 2004 (August 4, 2004, plus ninety days), when the time period expired to file a petition for a *writ of certiorari* from the Ohio Supreme Court's August 4, 2004, dismissal of his appeal. *See Allen v. Yukins*, 366 F.3d 396, 400 (6th Cir. 2004). The statute of limitations then began to run again and expired 46 days later, on December 16, 2004. Petitioner executed his habeas corpus petition almost eight months later, on August 1, 2005. Thus, claims two, four, and five are untimely unless equitable tolling of the statute of limitations is appropriate, *see Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001), or one of the provisions of 28 U.S.C. §2244(d)(1)(B) or (D) applies to delay the start date of the running of the statute of limitations. As noted, in *DiCenzi v. Rose, supra,* the United States Court of Appeals for the Sixth Circuit recently addressed application of the statute of limitations under circumstances similar to those that are alleged in this case. The defendant in *DiCenzi v. Rose* was not advised of his right to appeal his sentence and did not learn that he could appeal his sentence until almost two years after his guilty plea. *Id.*, at 466-467. The Sixth Circuit reversed the District Court's dismissal of the habeas corpus petition as untimely, and remanded the case for a determination of when a reasonably diligent person in the defendant's circumstances would have learned about his right to appeal:

5

DiCenzi argues that... the statute should not have started running until ... he was informed by the Public Defender that he had the right to an appeal.

Of course, during all this time, had DiCenzi merely inquired of a court or a public defender regarding whether he had the right to an appeal, he could have found out that he did. He argues, however, that it is not reasonable to expect a defendant who pleaded guilty to be aware of mandatory statutory appeal rights from the sentence imposed, especially when neither the court nor his attorney at sentencing informed him of any such rights. In support of this argument, DiCenzi cites *Granger v. Hurt,* 90 Fed.Appx. 97, 99-101 (6th Cir. Jan.23, 2004) (unpublished opinion), wherein an Ohio prisoner (Granger) had been told by his attorney that the attorney would appeal Granger's conviction. The attorney then failed to do so, and Granger did not discover this failure until he called the attorney to check on the status of his appeal two months after the deadline for filing the appeal had passed. The district court held that the proper date for starting the statute of limitations was the deadline for filing a notice of appeal of his sentence, since Granger *could* have discovered his attorney's failure on that date. We reversed, holding that the district court's decision "ignores the reality of the prison system and imposes an unreasonable burden on prisoners seeking to appeal," and noting that § 2244(d)(1)(D) "does not require the maximum feasible diligence, only 'due,' or reasonable, diligence." *Granger,* 90 Fed.Appx. at 100 (citing *Wims v. United States,* 225 F.3d 186, 190 n. 4 (2d Cir.2000)); *see also, e.g., Moore v. Knight,* 368 F.3d 936, 940 (7th Cir.2004) (evaluating a prisoner's due diligence in investigating trial errors, and noting the difficulties inherent in the prison environment); *Aron v. United States,* 291 F.3d 708, 712 (11th Cir.2002) (same). Finding that "the two months that Granger waited before inquiring about his appeal was, under the circumstances, not unreasonable," we held that Granger had exercised due diligence and thus that the AEDPA statute of limitations began running on the date he learned from his attorney that the appeal had not been filed. *Granger,* 90 Fed.Appx. at 100.

Accordingly, as noted by the Second Circuit,

The proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered [his right to an appeal]. After that date, petitioner was entitled to further delay (whether in actually making the discovery, or in acting on a previously made discovery, or for any other reason whatsoever),

6

> so long as he filed his petition within one year of the date in which the discovery would have been made in the exercise of due diligence. *Wims,* 225 F.3d at 190.
>
> \*\*\*
>
> ... [T]he date on which the limitations clock began to tick is a fact-specific issue the resolution of which depends, among other things, on the details of [a defendant's] post-sentence conversation with his lawyer and on the conditions of his confinement in the period after [sentencing]. *Wims,* 225 F.3d at 190-91 (citing *Easterwood v. Champion,* 213 F.3d 1321, 1323 (10th Cir.2000) (taking into account "the realities of the prison system" in determining due diligence)).

*Id*., at 470-471. "[P]etitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim, pursuant to 28 U.S.C. § 2244(d)(1)(D). *Id.,* at 471, citing *Lott v. Coyle,* 261 F.3d 594, 605-06 (6th Cir.2001).

Here, the transcripts of petitioner's guilty plea and sentencing show that petitioner was not advised of his right to appeal during those proceedings. *See* Exhibits H and I to Return of Writ. To the contrary, the trial court advised petitioner that he was waiving his right to appeal by virtue of his guilty plea:

> COURT: We have a trial, I think it was schedule for the 19th. If you tell me you're guilty, there will be no trial, instead we will proceed to the sentencing phase.
>
> By telling me you're guilty, you're giving up your rights to a speedy public jury trial. Your right at that trial to confront or cross examine witnesses against you. You have a right to subpoena in your own witnesses who could testify in your defense. You have a right to require the State to prove its case beyond a reasonable doubt. You have a right to testify yourself or you can remain silent and not testify against yourself. If convicted, you would have a right of appeal. You have a right to be represented by counsel throughout the trial and the appeal. Do you understand all of these rights?

>    DEFENDANT: Yes, sir.
>
>    COURT: And do you understand by telling me you're guilty, you're giving them up in this case?
>
>    DEFENDANT: :Yes.  Yes, sir.

*Deposition, at 6-7, Motion to Expand Record.* Further, petitioner states that he did not know about and was not advised by either the trial court or his attorney that he had the right to appeal his sentence.

Petitioner was represented by attorney Linda Cushman. *See Motion to Expand Record, Deposition of Deon J. Monroe, June 28, 2006,* at 10. According to petitioner, he had "hardly any" contact with Cushman. *Id.*, at 11. He went to her office about three times. She convinced him to plead guilty. *Id.*, at 12. Cushman told petitioner that he could get three to ten years. *Id.*, at 15. She drove petitioner back and forth to his court hearings in Logan County from her office in Springfield, Ohio, a drive of about 45 minutes, but they did not speak much during that time. *Id.*, at 12-13.

Petitioner maintains that he never knew that he had the right to appeal his sentence:

>    I didn't know nothing about an appeal.  This [was] my first time, you know, being incarcerated as far as in prison.  This is my first time I had a paid attorney.

*Id.* He acknowledged four prior misdemeanor convictions, and misdemeanor juvenile convictions, but said that he had never previously filed an appeal, and did not know that he could do so. *Id.*, at 5-6, 7-8. Petitioner states that he never spoke to his attorney after he was sentenced. *Id.*, at 16. He never asked Cushman to file a notice of appeal. *Id.*, at 17.

>    Q. [Y]ou're absolutely certain she never mentioned one word about an appeal?
>
>    A. I'm positive.

8

>    \*\*\*
>
>    Q. She never said anything about an appeal?
>
>    A. No.

*Id.*, at 17-18.

>    Q. Did you know that there was such a thing as a Court of Appeals?
>
>    A. Never even heard of it.

*Id.*, at 18.

Petitioner was sentenced April 9, 2003. Exhibit B to Return of Writ. On April 29, 2003, he wrote his attorney inquiring as to whether she could file a request for sentence reduction so that he could obtain judicial release. Exhibits 3 and 4 to Motion to Expand Record. Monroe arrived at the North Central Correctional Institution on May 19, 2003. It appears that he remained there from May 19, 2003, until August 2003, when he was transferred to the Clark County Jail on other charges. He was in the Clark County Jail until December 2003. *See Traverse; Deposition*, at 22. He began going to the prison's law library in January or February of 2004. *Id.*, at 22.

>    I went in there to discuss something with a friend of mine pursuing sentence reduction. I never knew nothing about you could appeal to have your sentence reduced. I was just trying to find any possible way to get judicial release or anything.

*Id.*, at 23. According to petitioner, in the beginning of 2004, Mr. Chandler, who worked at the prison's law library, told petitioner that he could appeal his sentence. *Id.*, at 23-24.

>    Q. So at what point in time are we talking about when you learned about your right... to appeal your conviction?
>
>    A. Beginning of 2004.
>
>    Q. And when did you first decide you wanted to appeal your

9

> conviction?
>
> A.  After he said that he would help me.  It was probably like February.

*Id.*, at 24.

Respondent has attached an affidavit from prison inmate Lewis Chandler, dated June 28, 2006, which indicates:

> 1.  In the spring of 2003, I told Deon Monroe about his right to pursue a state criminal appeal.
>
> 2.  I did not explain to Mr. Monroe how to proceed to file such an appeal.
>
> 3.  Based on my conversations with Mr. Monroe, I am not certain if Mr. Monroe understood his right to file an appeal.
>
> 4.  In December 2003, I agreed to prepare a delayed appeal for Mr. Monroe.

*Affidavit of Lewis Chandler, Exhibit 9 to Motion to Expand Record.*  On December 14, 2004, petitioner wrote his attorney requesting a copy of his file and stating that he had "decided to attack the constitutionality" of his conviction or guilty plea.  He said that he had called Mrs. Cushman's office a number of times and eight months before had asked for a free copy of his transcripts.  He said, "My time is very important in filing an appeal."  Exhibits 5, 6, and 7 to *Motion to Expand Record*.

Petitioner indicated in his March 2, 2006, traverse in relevant part as follows:

> Petitioner... was 22 years of age at the time he entered a plea of guilty....
>
> At the time of entering a plea of guilty [and] at the time of sentencing, the trial court or trial counsel did not advise the petitioner that he could file an appeal... or ask the petitioner if he wanted to file an

10

> appeal [or] that if he could not afford the cost of an appeal or counsel to represent him on appeal, that being indigent, counsel could be appointed to represent him on appeal at state expense....
>
> Petitioner arrived at prison on April 23, 2003. While at [the] correctional reception center, petitioner was transferred to the Clark County Jail on another case. Thereafter, in May of 2003, he was transferred back to C.R.C., and a couple of weeks later he was transferred to his parent institution (N.C.C.I.), North Central Correctional Institution.
>
> During the months of June, July, and August of 2003, petitioner began talking to other prisoners about his case; before he could understand whether or not he [could] file an appeal, or how to file an appeal[,] he was transferred back to the Clark County Jail on unrelated pending charges in August of 2003. Petitioner remained in the Clark County Jail until December of 2003. [T]hen he was transferred back to N.C.C.I....
>
> ... [T]he conviction in Logan County was his first conviction, and the first time he had been sentenced to serve a prison term....
>
> During the months of December of 2003, and January of 2004, petitioner learned that he could file for a delayed appeal pursuant to App.R. 5(A). Then he had to find someone to write the required motions and pleadings for him.....
>
> Thereafter, petitioner sought help in writing letters to his previous trial counsel and to the Clerk of Court ... of Logan County requesting his sentencing judgment entry and his sentencing transcripts. ... Petitioner finally received a copy of his sentencing judgment entry on or about January 15, 2004. Thereafter, on February 3, 2004, ... petitioner filed a motion for leave to appeal pursuant to App.R. 5.

*Traverse*, Doc. No. 20, at 3-4.

Petitioner's statement in his December 14, 2004 letter to Ms. Cushman that he had been trying to get his transcripts from her for eight months and that he knew time was important to the filing of his appeal as well as his statement in the traverse that he started speaking to other inmates about his case in June, July, and August of 2003 and Chandler's affidavit indicating that Chandler told

11

petitioner about his right to appeal in spring of 2003, contradict petitioner's deposition testimony denying that he spoke with other inmates about his case until August 2003 or learning that he had the right to appeal until the beginning of 2004. *Deposition*, at 21. On February 3, 2004, petitioner filed his motion for delayed appeal.

This Court need not resolve, however, whether claims two, four, and five are timely under 28 U.S.C §2244(d)(1)(D) or 2244(d)(1)(B), or whether equitable tolling is appropriate, because the Magistrate Judge concludes, in any event, that petitioner's allegation that he was denied his right to appeal in claims one and three is meritorious and that the remainder of petitioner's claims therefore are moot. Therefore, respondent's request for a stay of proceedings pending a decision from the United States Supreme Court in *Lawrence v. Florida*, 421 F.3d 1221 (11th Cir. 2005), *certiorari granted by Lawrence v. Florida*, 126 S.Ct. 1625 (U.S. March 27, 2006), is **DENIED.**[1]

### III. CLAIMS ONE AND THREE - MERITS

In claims one and three, petitioner asserts that the state appellate court improperly denied his motion for delayed appeal pursuant to Ohio Appellate Rule 5(A). Such claim is not appropriate for federal habeas corpus review. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from

---

[1] Respondent states that the United States Supreme Court is likely to address in *Lawrence v. Florida, supra,* the issue of whether a post conviction or collateral action tolls the running of the statute of limitations under 28 U.S.C. §2244(d)(2), the ninety day time period within which a petition for a writ of *certiorari* could be filed, regardless of whether a petition for a writ of *certiorari* is actually filed. *Respondent's Supplemental Brief*, at 7-8. In *Abela v. Martin*, 348 F.3d 164, 172-173 (6th Cir. 2003), the United States Court of Appeals for the Sixth Circuit held that "the statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until the conclusion of the time for seeking Supreme Court review of the state's final judgment on that application independent of whether the petitioner actually petitions the Supreme Court to review the case." In view of the Magistrate Judge's resolution of this action, however, such issue is not relevant to this case.

illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitioner's allegations in claim four address a collateral matter that is unrelated to his detention. *Kirby v. Dutton*, 794 F.2d 245 (6th Cir. 1986). Further, to the extent that petitioner asserts a violation of state law, such issue is not appropriate for federal habeas review.

A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id*. (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

However, petitioner asserts in claims one and three that he was denied his right to appeal. *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985(pleadings of *pro se* litigants must be liberally construed); *see also Traverse*, at 13 (alleging the denial of the right to appeal). As discussed, petitioner alleges that he was unaware of his right to appeal, and that neither his attorney nor the state trial court advised him of his right to appeal his sentence, thus depriving him of his right to appeal. Because the state courts did not address this claim, this Court conducts a *de novo* review. *Howard*

13

*v. Bouchard,* 405 F.3d 459, 467 (6th Cir. 2005).[2]

Nothing in the record discredits petitioner's allegation that he did not know about, and was not advised of his right to appeal his guilty plea and sentence.  Additionally, and for the reasons discussed by the United States District Court for the Southern District of Ohio, Western Division in *Wolfe v. Randle*, 267 F.Supp.2d 743 (S.D. Ohio 2003),  this Court agrees that

> due process is offended when a defendant who pled guilty is kept completely ignorant of his appellate rights. *Cf. Peguero v. U.S.,* 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18; *White v. Johnson,* 180 F.3d 648, 652 (5th Cir.1999).
>
> \*\*\*
>
> The Constitution is violated if a convicted defendant is not given the right to appeal "by reason of his lack of knowledge of his right and the failure of his counsel or the court to advise him of his right to appeal with the aid of counsel." *Jacobs v. Mohr,* 265 F.3d 407, 419 (6th Cir.2001) (citing *Goodwin v. Cardwell,* 432 F.2d 521, 522-23 (6th Cir.1970)). The defendant has ultimate authority in making certain fundamental determinations pertaining to his case, including the right to appeal. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The authority to pursue an appeal, even one following a guilty plea, is the defendant's alone. *Marrow v. United States,* 772 F.2d 525, 530 (9th Cir.1985). The decision to appeal is not the determination of defendant's lawyer. *Id.* In order to make such a decision, the defendant must have knowledge about the appeals options available to him. *United States ex rel. Smith v. McMann,* 417 F.2d 648, 654 (2d Cir.1969), *cert. denied,* 397 U.S. 925, 90 S.Ct. 929, 25 L.Ed.2d 105 (1970) (construing *Douglas v. California* as imposing on a state "a duty to warn every person convicted of a crime of his right to appeal⋯the right to appeal at the expense of the state is a mere illusion if the convicted indigent defendant does not know such a right exists."); *State v. Sims,* 27 Ohio St.2d 79, 272 N.E.2d 87, 91 (1971) (finding that "in the absence of evidence in the record upon

---

[2] Respondent did not raise the issue of procedural default as to this claim, which issue is an affirmative defense. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Gray v. Netherland*, 518 U.S. 152, 166 (1996). In any event, the record reflects that petitioner raised these same allegations on appeal before the state courts.  See Exhibits C and E to Return of Writ.

> which it could be determined that an indigent convicted defendant knowingly and intelligently waived his right of direct appeal···it was error for the Court of Appeals to dismiss the motion for leave to appeal without making such a factual determination.")
>
> In order to be properly informed, a defendant must be told of his right to appeal, the procedures and time limits involved in proceeding with that appeal, and the right to have the assistance of appointed counsel for that appeal. *White,* 180 F.3d at 652 (5th Cir.1999), *Norris v. Wainwright,* 588 F.2d 130, 135 (5th Cir.), *cert. denied,* 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979) The petitioner bears the burden of showing by a preponderance of the evidence that he was not advised of his rights. *Faught v. Cowan,* 507 F.2d 273, 275 (6th Cir.1974), *cert. denied,* 421 U.S. 919, 95 S.Ct. 1583, 43 L.Ed.2d 786 (1975). Further, a defendant cannot base a claim on the court's failure to inform him of his appellate rights if he has personal knowledge of these rights. *Peguero,* 526 U.S. at 29-30, 119 S.Ct. 961(citing *Soto v. U.S.,* 185 F.3d 48, 54 (2d Cir.1999)).

*Id.*, at 746-748. In view of the foregoing, the Magistrate Judge likewise concludes that petitioner was constitutionally denied his right to due process and to appeal.

## IV. PETITIONER'S MOTION FOR SUMMARY JUDGMENT

Petitioner has filed a motion for summary judgment on all of his claims. A moving party is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56(c), if the pleadings, documents obtained pursuant to discovery, exhibits, and state court record demonstrate that there is no genuine issue as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). When deciding a motion for summary judgment, the reviewing court must construe the evidence and all inferences to be drawn from the evidence in a light most favorable to the non-moving party. *Id.*, at 255. It is the moving party who bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A dispute of fact is "genuine" within the

context of a motion for summary judgment only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 252. Additionally, "[t]he existence of contested facts will not defeat a summary judgment motion if those facts which affect the outcome of a claim are not in controversy." *Hawk v. Mills*, 941 F.Supp. 683, 687 (M.D. Tenn. 1996), citing *Anderson, supra*, 477 U.S. at 248. To contest a motion for summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*, citing *Anderson, supra*, 477 U.S. at 248. It is well settled that a motion for summary judgment under Rule 56(c) is applicable in habeas corpus proceedings. *See, e.g., Blackledge v. Allison,* 431 U.S. 63, 80-81 (1977). Thus, petitioner's motion for summary judgment is governed not only by the standards governing summary judgment motions, but also by the principles, rules, and substantive case law governing the area of habeas corpus.

For the reasons discussed, *supra*, petitioner's motion for summary judgment on his claims that he was denied due process and his right to appeal is **GRANTED**; however, petitioner's motion for summary judgment on the remainder of his claims is **DENIED**, since those claims are moot in light of the recommended resolution of claims one and three. Further, petitioner's request that this case be remanded to the trial court for re-sentencing is **DENIED.** Because the Magistrate Judge is recommending that the petition for a writ of habeas corpus be granted on petitioner's claim that he was denied his right to appeal, the appropriate remedy is remanding the case to the state appellate court for reinstatement of petitioner's appeal. Petitioner may raise therein his claim that his sentence violated the United States Supreme Court's decision in *Blakely v. Washington, supra*.

In sum, and for all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus conditionally be granted on claims one and three, and that the

State of Ohio reinstate petitioner's appeal within sixty (60) days or release petitioner. The Magistrate Judge further **RECOMMENDS** that the remainder of petitioner's claims be dismissed as moot. Petitioner's request for summary judgment, Doc. No. 38, is **GRANTED** , as to claims one and three, but is otherwise **DENIED.** Respondent's request for a stay of proceedings pending a decision from the United States Supreme Court in *Lawrence v. Florida*, 421 F.3d 1221 (11th Cir. 2005), *certiorari granted by Lawrence v. Florida*, 126 S.Ct. 1625 (U.S. March 27, 2006), also is **DENIED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation* *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court

adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel
United States Magistrate Judge
